Commonwealth of Pennsylvania, Department of Public Welfare *v.* Richard W. Livingood and Romaine Livingood, a/k/a Amelda Romaine Livingood, a/k/a Romaine Wright, a/k/a Amelda Romaine Wright, his wife, Appellants.

Argued October 30, 1975, before Judges CRUMLISH, JR., KRAMER and MENCER, sitting as a panel of three.

*Frank A. Conte,* with him *George J. Modrak,* for appellants.

*Robert S. Englesberg,* Assistant Attorney General, with him *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, January 7, 1976:

This is an appeal from an order of the Court of Common Pleas of Washington County, sitting en banc, which dismissed the exceptions of Romaine Wright and Richard W. Livingood (appellants) to an order of the Court making absolute a rule to show cause why the remainder of a fund resulting from the execution sale of their property should not be paid over to the Department of Public Welfare (DPW).

Appellants, who are now divorced, had received, while husband and wife, $7,299.70 in aid and assistance from DPW between 1971 and 1973. Before receiving aid, they entered into the standard reimbursement agreement with DPW authorizing by confession the entry of judgment in the amount of $2,000, the judgment to act as a lien upon the real and personal property of appellants. By the terms of that agreement, no execution can be made on the home of a judgment debtor during the debtor's liftime or

during the lifetimes of his or her spouse and their dependent children.

Other creditors, however, are not so forbearing, as appellants soon discovered. One of appellants' creditors, the Washington Consumer Discount Company, obtained a judgment on a note and execution was issued on that judgment. This resulted in the sale of appellants' residence by the sheriff on April 6, 1973. After payment of taxes and costs and after satisfaction of the amount due the execution creditor, the amount of $5,363.71 remained for distribution. The court below, on a rule to show cause, awarded the entire fund to DPW as partial reimbursement for the assistance payments made to appellants.[1] Appellants' exceptions to this award were dismissed by the court en banc; hence, this appeal.

Appellants contend first that the language in the reimbursement agreement preventing execution on the judgment debtor's home also exempts the fund remaining after an execution sale initiated by a third party. Secondly, they argue that, even if the fund is not exempt, the recovery of DPW is limited to the $2,000 already reduced to judgment and that, as to the balance, DPW must proceed by original process in an action in assumpsit, rather than by petition for a rule to show cause.

Appellants' first contention is without merit. Once execution has been obtained by a third party, the fund obtained from the sale is subject to DPW's lien just as if appellants had voluntarily sold their house.

However, we agree with appellants that the petition for a rule to show cause was not the proper procedure to obtain judgment on the claim in excess of the $2,000 authorized by the reimbursement agreement. Section 4 of The Support Law,[2] which authorizes suit for reimbursement, reads in relevant part:

---

1. It is not questioned here that DPW is entitled to be paid $2000 from the proceeds of the sheriff's sale.

2. Act of June 24, 1937, P. L. 2045, *as amended*, 62 P.S. §1974.

"(a)   Except as limited by subsection (c) hereof, the real and personal property of any person shall be liable for the expenses of his support, maintenance, assistance and burial, and for the expenses of the support, maintenance, assistance and burial of the spouse and unemancipated minor children of such property owner, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, or if a right or cause of action existed during the time such expenses were incurred from which the ownership of such property resulted. *Any public body or public agency may sue the owner of such property for moneys so expended, and any judgment obtained shall be a lien upon the said real estate of such person and be collected as other judgments,* except as to the real and personal property comprising the home and furnishings of such person, which home shall be subject to the lien of such judgment but shall not be subject to execution on such judgment during the lifetime of the person, surviving spouse, or dependent children." (Emphasis added.)

We conclude that the suit so authorized should be commenced by original process in the court of common pleas. The appellate courts of this Commonwealth have repeatedly held that a rule to show cause is not a proper substitute for original process except as authorized by statute. *Cooney v. Pennsylvania Osteopathic Association,* 434 Pa. 358, 253 A. 2d 256 (1969) ; *Percival v. City of Philadelphia,*     Pa. Commonwealth Ct.    , 309 A. 2d 597 (1973) ; *Short v. Board of the School District of Upper Moreland Township,* 108 Pa. Superior Ct. 503, 165 A. 669 (1933). No such statutory authorization appears in this case.

Nor are we persuaded by the lower court's reliance on *Akers Estate,* 35 Pa. D. & C. 2d 476 (1964). That case concerned the repayment of aid from the estate of a

minor and was within the exclusive jurisdiction of the Orphans' Court where proceeding by a rule to show cause was sanctioned. We agree with the many courts of common pleas throughout the Commonwealth which have held that a petition for a rule to show cause is not the proper procedure to initiate an action in cases of this nature. *See Commonwealth v. First National Bank of Berwick,* 54 Pa. D. & C. 2d 48 (1971) ; *Perkins v. Yellow Cab Co.,* 49 Pa. D. & C. 2d 297 (1970) ; *Ryan v. Hockinberry,* 42 Pa. D. & C. 2d 578 (1967) ; *Matter of Hoffman,* 38 Pa. D. & C. 2d 577 (1966). The reasoning of Judge CAVANAUGH in *Perkins v. Yellow Cab Co., supra,* is particularly apt:

"Notwithstanding the broad interpretation often given the word 'sue,' I am convinced that the legislature intended a more restrictive meaning in this instance. Had the legislature intended to include petition and rule as a means of enforcing the right of action created by section 4, they no doubt would have so provided. See Abernathy v. Chester County Tax Claim Bureau, 26 D. & C. 2d 292 (1961). Section 3 of The Support Law of 1937, 62 P.S. §1973, which provides for liability of relatives for the support of indigents, specifically provides for petition and rule; and that section of The Support Law was passed at the same time as section 4. Thus, the legislature was clearly cognizant of the procedural distinction. Moreover, it is clear that in creating the right of action embodied in section 4, the legislature also intended to create a special remedy. Thus, the 'judgment,' obtained under section 4, unlike other judgments, specifically prohibits execution against the home and furnishings during the lifetime of the assisted person, surviving spouse or dependent children. It is clear, of course, that the word 'judgment' does not encompass an order pursuant to a petition and rule; and, therefore, the restrictive language would apply only

to section 4 judgments against the person rendered assistance. Accordingly, the logical conclusion of the Commonwealth's position is that in using the word 'sue,' the legislature intended to include petition and rule and suit to judgment as alternative procedures, but that it intended to restrict judgments only. In my view, the legislature never intended such an anomaly; rather, the legislature intended to create a right of action, which could be enforced only by suit to judgment. See Matter of Hoffman, 38 D. & C. 2d 577 (1966)." 49 Pa. D. & C. 2d at 300-01.

Orders reversed and case remanded to the Court of Common Pleas of Washington County for entry of an order discharging the rule to show cause issued on the petition of the Department of Public Welfare.