## Kudia v. Nationwide Insurance Company

*Hassel, Yost & Sorrentino,* for petitioner.
*Barley, Snyder, Cooper & Barber,* for respondent.

BUCHER, *J.*, August 21, 1980—The matter before the court concerns the procedure to be used when instituting proceedings under the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.101 et seq.

On February 14, 1980 petitioner, Elizabeth Kudia, filed, and on March 10, 1980 presented, a petition and rule to show cause why respondent Nationwide should not pay no-fault benefits allegedly due her under the No-fault Act. The rule was signed and was made returnable in thirty days and a hearing was scheduled for April 9, 1980. Nationwide, having been served with a copy of the petition and rule on March 13, 1980, filed a motion to discharge the petition and rule. The scheduled hearing has been continued pending disposition of this motion, which is now before us.

The issue presented by Nationwide's motion is whether or not an action may be commenced for the payment of allegedly overdue no-fault benefits by filing a petition and rule to show cause.

Pa.R.C.P. 1007 provides that an action may be commenced by filing a praecipe for a writ of summons, a complaint, or an amicable action. As a general rule of practice, an action must be commenced in accordance with Rule 1007: Hartmann v. Peterson, 438 Pa. 291, 265 A. 2d 127 (1970).

The only exceptions to this rule occur where a specific procedure is laid down by statute: Com. v. Dauphin County, 354 Pa. 556, 47 A. 2d 807 (1946); Com. v. Livingood, 22 Pa. Commonwealth Ct. 530, 349 A. 2d 816 (1976).

Petitioner, in her brief opposing respondent's motion, cites Long v. Rockwood Ins. Co., 5 D. & C. 3d 457 (1978), as supporting the use of a petition and rule to commence an action under the No-fault Act.

In that case, the Court of Common Pleas of Philadelphia County held that the No-fault Act does authorize such an exception to Pa.R.C.P. 1007. After close scrutiny of the act and the opinion in Long, we are unable to find any support for such authorization.

Because we are differing with a decision which has been regarded as an authority on this issue it is important to make clear the points of divergence, and we will therefore proceed along the same course of inquiry as conducted in Long.

The court in Long cited two cases, at p. 459, where legislative intent to allow special procedure for commencement of an action other than under Pa.R.C.P. 1007 was found:

In Pennsylvania Crime Comm. Petitions, 446 Pa. 152, 285 A. 2d 494 (1971), proceedings under the Pennsylvania Crime Commission Act of October 4, 1978, P.L. 876, 71 P.S. §1190.1, whereby the commission may "seek the aid of" the court to enforce compliance with its subpoenas, were held not to fall within the category of an action under Rule 1007 and institution of proceedings by petition and rule was held proper.

In Com. v. Derry Twp., 10 Pa. Commonwealth Ct. 619, 314 A. 2d 868 (1973), proceedings by the Department of Environmental Resources to enforce its orders against the corporate authorities of a municipality under the Clean Streams Law of June 22, 1937, P.L. 1987, as amended, 35 P.S. §691.1, were held not to be a Rule 1007 action, and again the petition procedure was upheld.

However, both Pennsylvania Crime Comm. Petitions and Derry were cases in which a Commonwealth body was seeking to enforce subpoenas or

orders already issued by it under statutory authority; in the case before us, petitioner is a private individual seeking to enforce payment of allegedly overdue benefits and not compliance with orders already issued.

The court in Long, at pp. 459-460, used the language from two sections of the No-fault Act relating to instituting proceedings as the basis of its conclusion as to the use of a petition and rule; the act states that "an action . . . may be commenced" for overdue no-fault benefits, 40 P.S. § 1009.106(c)(1), and that responsibility for the cost of special rehabilitative treatment may be determined by the court "[a]fter a hearing upon application" by any interested person: 40 P.S. § 1009.404(a).

The Long court thereupon resorted to the rules of statutory construction to determine the meaning of these words. We take the same approach but arrive at a different conclusion.

The primary rule of statutory construction is to ascertain and effectuate the intent of the legislature as expressed in the statute: Leach v. Philadelphia Sav. Fund Soc., 234 Pa. Superior Ct. 486, 490, 340 A. 2d 491 (1975).

Every statute shall be construed, if possible, to give effect to all its provisions: Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1921(a).

When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit: 1 Pa.C.S.A. § 1921(b).

Section 1921(c) indicates the factors to be considered where the words of the statute are not explicit.

The court in Long considered the words of sections 106(c)(1) and 404(a) of the No-fault Act to

"appear to be inexplicit." We disagree. There is nothing unclear about the words "an action . . . may be commenced" and "hearing upon application. . . ." The way to commence an action is prescribed in Pa.R.C.P. 1007. We agree that the hearing under 40 P.S. §1009.404(a) would be requested by petition, but this special section, relating to a particular type of treatment arising from an auto accident, neither expressly nor implicitly refers in any way to the institution of an action to compel payment of overdue no-fault benefits. The very fact that the act has no section laying down the procedure to be used but rather refers to the commencement of an action without further qualification clearly indicates that the procedure to be used is that which is generally used. No matter how desirable or corner-cutting the petition approach may or may not be, we cannot find in the act that which is absolutely not there.

However, even if we further follow the Long court's statutory construction route, we cannot share in its conclusion. The act, 40 P.S. §1009.102(a), emphasizes the need for "a Statewide low-cost, comprehensive, and fair system of compensating and restoring motor vehicle accident victims;" section 102(b) requires a system of prompt and adequate basic loss benefits. Towards achieving this, the legislature has eliminated the need to determine fault and has laid down penalties for obligors who unreasonably withhold benefits: sections 106(a)(2) and 107(3). The Long court felt also that the legislature intended actions to be brought "in a relatively speedy and inexpensive manner to compel prompt payment." Long, supra, at p. 462. While such aspiration may be inferred from the words of section 102, the act

nonetheless specifies no exceptional procedure for the commencement of an action for benefits. It would be inconsistent for the legislature, having enacted specific measures to further its expressed intent, to hope that others would be adopted by mere implication.

The Statutory Construction Act, 1 Pa.C.S.A. §1991, defines "action" to mean "any suit or proceeding" in any court of this Commonwealth. Long asserts at p. 462, that "this definition *would appear* to permit the institution of a claim either by petition and rule or by complaint in conformity with Pa.R.C.P. 1007." We fail to see the logic in this statement; such a definition cannot "appear to permit" anything in the face of Rule 1007 which expressly *requires* the institution of a claim in the manner it lays down, save where a statute specifically provides otherwise.[1] By substituting the words "any suit or proceeding" for "an action" in section 1009.106(c), we read: "any suit or proceeding . . . may be commenced." The No-fault Act says nothing about exceptional procedure for such commencement; adequate rules for it already exist.

Section 1009.404(a), which the Long court felt, at p. 463, buttresses its conclusion, concerns (as earlier stated) application for an order compelling payment for special rehabilitative treatments. We do not believe that the legislature intended us to look to such a section in order to ascertain the procedure to be used for bringing an action generally for overdue benefits.

---

1. If one were to follow this theory to its logical conclusion, any suit or proceeding brought to enforce any legal right could be permissibly commenced by petition—rendering Rule 1007 redundant.

Long, at p. 463, states that: "Work loss benefits are indistinguishable from the benefits for medical expenses described in section 404." If this were so, the legislature would not have felt the need to enact section 404, which by its very existence distinguishes rehabilitative treatment expenses from no-fault benefits in general.

"[T]he act fails to set forth a section pertaining to overdue work loss benefits similar to section 404(a)"—Long, at p. 463. There, the court was impelled by "the force of logic" to conclude that this omission of the act authorizes commencement of an action to compel overdue work loss benefits by petition and rule. We find ourselves impelled elsewhere. Section 1009.205 explains how work loss is to be calculated. "No-fault benefits are payable as loss accrues. Loss accrues not when injury occurs, but as allowable expense, work loss . . . is sustained." Section 1009.106(a)(1).

"If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced. . . ." Section 1009.106(c)(1). As we arrive back at our departure point, it is clear that the procedure for compelling payment of benefits, including those for work loss, has been provided for already, and thus a section 404(a) equivalent section for work loss would have been superfluous.

The Long court, at p. 464, remarked that litigation of the petitioner's claim in accordance with Pa.R.C.P. 1007 "could subject him to great delay and expense." However, it should be noted that Pa.R.C.P. 126 expressly requires liberal construction of the rules "to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable." This ob-

viates the need to search for ways to circumvent the rules merely for reasons of financial and temporal economy. Furthermore, a lack of confidence in the rules cannot justify a finding of legislative intent that they be inapplicable, where none is expressed.

In any event, the interest of speed and economy should not overshadow the requirement of mechanisms designed to achieve a fair and comprehensive determination. Respondent claims that by allowing an action for no-fault benefits to be commenced by petition and rule, the court would remove from respondent certain avenues of discovery. Pa.R.C.P. 209, which lays down the post-petition procedure, expressly permits no discovery other than taking of depositions. Respondent maintains that it would be impossible to know whom plaintiff might call as witnesses and therefore it could not take depositions of them all; and that every time discovery other than depositions were sought, the court would have to be petitioned.

While petitioner's contention is noted that the No-fault Act makes special provisions for discovery with regard to physical and mental examinations, section 1009.401, and earnings, medical reports and costs, section 1009.408, these informal discovery devices are supplemental to the discovery procedures already available in any civil action. Petitioner claims that respondent has an even broader right to discovery under the petition and rule procedure than petitioner. This may be so, but if the petition and rule procedure were permissible as an alternative to Rule 1007 procedure[2] under the

---

2. Long notes, at p. 464, that ". . . nothing in this opinion is intended to preclude a claimant of such benefits from bringing an action in accordance with Pa.R.C.P. 1007, if such is considered desirable."

No-fault Act, a petitioner would be able to dictate the mode and extent of discovery available by choosing one or other procedure to institute proceedings to suit his own purposes, and this would give rise to an unbalanced system affording the party claiming the right an advantage over the other.

Further, were issues only able to be decided with the use of depositions taken (as well as the material available under section 1009.408) much could be missed which may be important; in cases where an alleged injury occurred a long time before disposition by the court, witnesses' demeanor and appearance could play a crucial role in determining credibility and extent of injury. Under the petition and rule procedure, trial on the issues would be unavailable and to deny such opportunity would be contrary to the concept of equal justice. Clearly such an intent cannot be attributed to the legislature. Also, it is unlikely that it would without express provision intend that two different means of commencing an action for benefits be available at the claimant's option.

In addition to Long, petitioner cites six cases in support of her position. Of these, four were decided by the same judge who gave the opinion in Long[3] and they gave Long as their authority; Polcino v. GEICO, No. 333 November Term, 1977 (Philadelphia County) concerned the issue of right to jury trial and upheld the petition and rule without a detailed inquiry into whether it was authorized by the no-fault statute; and in Newman v. Prudential

3. Simonds v. Safeguard Mutual Insurance Co., 5 D. & C. 3d 467 (1978); Brown v. SEPTA, 5 D. & C. 3d 469 (1978); Carpenter v. Insurance Co. of North America, 2 Phila. 352 (1979); Robinson v. Safeguard Mutual Insurance Co., No. 3883 July Term, 1978 (Philadelphia County).

Ins. Co., No. 79-15553 (Delaware County), the petition and rule procedure was upheld in an order with no accompanying opinion.

Having found no express or implied intent in the No-fault Act that claims for benefits be initiated by petition and rule, this court cannot entertain petitioner's proceeding further. The petition was not auxiliary to jurisdiction already obtained and the commencement of an action for no-fault benefits by such petition is not authorized by statute, and thus such action is a nullity and confers no jurisdiction on the court: Correction of Official Records with Civil Action, 44 Pa. Commonwealth Ct. 511, 404 A. 2d 741 (1979). The petition cannot be used as original process: Halat v. Luzerne County Tax Claim Bureau, 68 Luz. 141 (1978). Our holding is without prejudice to petitioner's correctly filing a claim in accordance with Pa.R.C.P. 1007, should she so choose.

## ORDER

And now, August 21, 1980, the motion of respondent Nationwide Insurance Co. is granted and the petition of Elizabeth E. Kudia filed February 14, 1980, is dismissed for lack of jurisdiction.