## In Re: Commonwealth National Bank, Guardian of Lori J. Morrison

*John McCrea, III*, for the minor.
*Joseph F. Strain*, for Commonwealth.

SHUGHART, *P.J.*, October 26, 1981—On April 5, 1966, Commonwealth National Bank was appointed guardian of the estate of Lori Morrison, a minor, whose estate consisted of cash received from the settlement of a personal injury claim. On August 5, 1979, Lori Morrision reached majority and the guardian filed an account.

At various times between August 12, 1974, and October 16, 1978, the Department of Public Welfare made payments to Lori's mother under an Aid to Dependent Children (ADC) grant. A portion of the funds distributed under this grant is attributable to Lori.

On July 24, 1979, a representative of the Department of Public Welfare presented an affidavit to the guardian seeking reimbursement from the minor's estate of the assistance attributable to Lori. On December 5, 1979, the guardian filed its first and final account and a statement of proposed distribution which included a proposed distribution of $4,753.52 to the Commonwealth for reimbursement of the ADC payments attributable to the ward. Objections to the proposed distribution were

filed by the ward on January 8, 1980. Thereafter, an auditor was appointed. The auditor concluded that the Commonwealth could reach a guardianship account, but that to do so it must first reduce its claim to judgment on the civil side of the court of common pleas. Since no judgment was obtained in the case at bar, the auditor concluded that the proposed distribution to the Commonwealth should be disallowed. The Commonwealth filed exceptions to the auditor's report on January 2, 1981.

After the Commonwealth filed its exceptions, on February 9, 1981, counsel for the parties stipulated that the guardian's account be confirmed and that distribution of the estate be made with the exception of the Commonwealth's disputed claim. It was agreed that $4,053.52 be deposited with the clerk of the orphans' court pending the outcome of the Commonwealth's exceptions. By order of court dated March 6, 1981, the stipulation was approved.

Basically, there are two questions which must be addressed to reach a proper resolution of this case. First, we must decide whether the Commonwealth has a right to be reimbursed from a minor's separate estate for payments it made for the benefit of the child under an ADC grant. If the first question is answered in the affirmative, then we must decide whether the Commonwealth has properly asserted its claim.

Resolution of the first question is relatively simple. The Support Law of June 24, 1937, P.L. 2045, as amended, 62 P.S. § 1971 et seq., provides in section 4, as follows:

(a) Except as limited by subsection (c) hereof, the real and personal property of *any person* shall be liable for the expenses of his support . . . incurred by any public body or public agency, if such property was owned during the time such expenses

were incurred. . . . 62 P.S. § 1974. (Emphasis added.) In the case at bar, the minor's estate falls squarely within the terms of this statute. The guardianship account was formed with the ward's funds on April 5, 1966, and the ward has continually been the owner of the funds held by the guardian since that time. Between August 12, 1974, and October 16, 1978, the Department of Welfare made assistance payments for her benefit under an ADC grant. Clearly, then, the ward was the owner of property during the time a public body or agency incurred expenses for her support. The statute contains no exception for a minor's separate estate.

Moreover, the cases uniformly indicate that a minor's estate may be used to reimburse the Commonwealth. See In Re Reiver's Estate, 343 Pa. 137, 22 A. 2d 655 (1941); Commonwealth, Department of Public Assistance v. Hornacek, 347 Pa. 596, 32 A. 2d 761 (1943); Washington Minors, 26 Fiduc. Rep. 448 (Phila. 1976), aff'd per curiam, 485 Pa. 208 (1979); Marchiafava Estate, 36 D. & C. 2d 319 (1965).

The ward argues that her mother received the assistance payments, that her mother is therefore primarily responsible to reimburse the Commonwealth, and that her estate cannot be reached until it is shown that the mother is unable to repay the Commonwealth. This argument was expressly rejected in Evans Estate, 24 Fiduc. Rep. 531 (Allegheny 1974), where the court stated: "It is true that parents are liable, but this does not prevent the Commonwealth from asserting its claim against the estates of minors. There is no requirement in the statute [62 P.S. § 1974] that the Commonwealth must first exhaust its remedies against the parents before proceeding against the property of the minors." Id. at 534-35. See also In Re Reiver's Es-

tate, 343 Pa. 137, 22 A. 2d 655 (1941); Commonwealth, Department of Public Assistance v. Hornacek, 347 Pa. 596, 32 A. 2d 761 (1943).

The auditor concluded that part of the public assistance rendered by the Commonwealth was constructively received by the ward; that the ward owned property within the meaning of section 4 of the Support Law; that the ward's property was owned during the time the Commonwealth incurred expenses for the support of the ward; and that the guardianship account could be reached by the Commonwealth. With this much of the auditor's report we agree.

It must next be decided whether the auditor was correct in his conclusion that the Commonwealth must reduce its claim to judgment prior to presenting it for satisfaction. The auditor concluded that section 4 of the Support Law requires the public agency to reduce its claim to judgment. The relevant language in section 4 is as follows: "Any public body or public agency *may sue* the owner of such property for moneys so expended, and any judgment obtained shall be a lien upon the said real estate of such person and be collected as other judgments. . . . " 62 P.S. § 1974(a). (Emphasis added.) This language does not create an exclusive method by which an agency must proceed; rather, it identifies one means by which reimbursement may be sought. There are courts which have construed this language as mandatory. See, e.g., Perkins v. Yellow Cab Company, 49 D. & C. 2d 577 (1966). We respectfully disagree with these decisions.

A claim by the Commonwealth for reimbursement of public assistance paid under an ADC grant was allowed when presented at the audit of a minor's account in In Re Reiver's Estate, 343 Pa.

137, 22 A. 2d 655 (1941). In Evans Estate, 24 Fiduc. Rep. 531 (1974), it was held that the Commonwealth could present its claim for reimbursement in the Orphans' Court Division on petition, and that it did not have to first recover a judgment in the Civil Division. Accord, Garrison (Minors), 64 D. & C. 2d 433 (1974); Akers Estate, 35 D. & C. 2d 476 (1964).

In Castleberry v. Commonwealth, Department of Public Welfare, 36 Pa. Commw. 480, 387 A. 2d 1360 (1978), the Department terminated assistance to several families when the recipients refused to sign reimbursement agreements which would place liens on real property which was held in trust for the benefit of the recipients' minor children. The court held that the Department could require the trustees to sign reimbursement agreements which would place liens on the real property held in trust for the benefit of their dependent children. In addressing an argument that the Department must proceed against the fiduciaries by filing an action at law the court stated:

Section 4 of The Support Law, by providing that the Department "may sue," and thereby conferring on it a remedy at law, *in no manner restricts the Department to that remedy* or prevents it from conditioning eligibility upon the signing of an agreement to reimburse. Id. at 488-89, 387 A. 2d at 1364. (Emphasis added.)

We conclude that the Commonwealth need not reduce its claim to judgment in an action at law prior to presenting its claim for reimbursement in the orphans' court.

The cases relied upon by the ward do not require a

different result. In Commonwealth, Department of Public Welfare v. Livingood, 22 Pa. Commw. 530, 349 A. 2d 816 (1976), the court recognized that proceedings in the orphans' court would not require a prior suit to judgment when it stated:

Nor are we persuaded by the lower court's reliance on Akers Estate, 35 Pa. D. & C. 2d 476 (1964). That case concerned the repayment of aid from the estate of a minor and was within the exclusive jurisdiction of the Orphans' Court where proceeding by a rule to show cause was sanctioned.

Id. at 533-34, 349 A. 2d at 818. Since our case involves an orphans' court matter, the result we reach is not inconsistent with the position taken by the Commonwealth Court. Shearer v. Moore, 277 Pa. Super. 70, 419 A. 2d 665 (1980), the only other case relied on by the ward, is inapposite. That case involved a question of whether the Commonwealth could be ordered to pay a proportionate share of the fees of counsel whose efforts achieved a settlement with a third party tortfeasor where the Commonwealth sought reimbursement from the proceeds of the settlement.

Here the Commonwealth presented a sworn affidavit to the guardian seeking reimbursement of funds it expended for the support of the ward over the course of approximately four years. The guardian admitted the Commonwealth's claim and included it in its statement of proposed distribution. The amount the Commonwealth seeks to recover has never been contested. The basis for the ward's attack is founded upon the procedure the Commonwealth employed to recover the funds. We conclude that the procedure to collect was proper. The exception of the Commonwealth to the conclusion

of the auditor in this respect must be sustained, and the claim of the Commonwealth paid.

## ORDER OF COURT

And now, October 26, 1981, the Commonwealth's exception to the conclusion of the auditor denying payment of the claim of the Commonwealth is sustained. Pursuant to the stipulation of counsel and order dated March 6, 1981, it is directed that the clerk of the orphans' court make payment of the $4,053.52 held by her to the Commonwealth of Pennsylvania.